The opinion of the court was delivered by
Watkins, J.
This is a third opposition, coupled with an injunction, restraining sale of certain property that was seized by plaintiffs in execution, as that of defendants’ as their judgment debtors, third opponents setting up title thereto and claiming ownership.
On the trial there was judgment' in favor of third opponents, decreeing them to be the owners of the property seized, and disregarding the other demands, and the seizing creditors have appealed.
The averments of opponents’ petition are, in substance, that the creditors of Bond & Williams, under a judgment for about §2500, caused a certain stock of goods and merchandise to be seized as their property. That same was situated in the town of Bonita, in a storehouse wherein the defendants had carried on a general mercantile business during the .year 1891, and is well worth the sum of §4000. That said stock of goods is their property, and was in their possession as such at date of seizure, to the knowledge of the seizing creditors, they having acquired same at a judicial sale made on the 2d of January, 1892, under an order of court made in sundry attachment suits against the defendants, Bond & Williams. That they subsequently engaged Bond & Williams as their agents to take charge of said btock of goods and merchandise, and gave them a special *999 procuration to that effect. That under said mandate they went into possession for the plaintiffs after the sale, and continued in the charge and management thereof up to the time of the seizure of Yale & Bowling, from time to time replenishing the stock, as occasion required.
Further appropriate allegation is made, as justifying the issuance of an injunction and as entitling them to damages.
The answer of the seizing creditors is, that the pretended agency of the defendants, Bond & Williams, is a fraudulent simulation, intended to screen their property from the pursuit of their creditors, they being notoriously insolvent at the date of said alleged procuration, and the real and actual owners of the property seized.
In the alternative they allege “ that if, at the commencement of the business, it was the intention to conduct it as that of third opponents, such intention was abandoned and was treated by third 'opponents themselves as the property and business of defendants.”
Third opponents urge a plea of res adjudicata against the charge of simulation in the answer, founded upon the issues raised by Yale & Bowling, in Liquidation, in the suit of Gilkeson-Sloss Commission Company vs. Bond & Williams, Yale & Bowling, in Liquidation, and, A. Baldwin & Co., Limited, Intervenors, 44 An. 841, and the judgment therein rendered, wherein the validity of same issues are alleged-to have been judicially determined.
It will thus appear that the sole question for our determination is-simulation vel non — the burden of proof resting on the seizing creditors.
There is no force in the plea of res judicata. The suit and judgment on which the plea is predicated was an ordinary attachment suit in which Yale & Bowling, in Liquidation, intervened and resisted the attachment of the property of Bond & Williams, as the common debtors of both parties, on several grounds, and amongst the number that plaintiffs’ demand was fictitious, and that the attachment was-obtained by consent of the defendants; and that plaintiffs’ purchase of the claim of the Monroe banks against the defendants was null and void.
It is quite true that in passing upon the issues thus raised in that case we employed the following language, to-wit:
“ From a careful examination of the record we are of opinion that intervenors have failed to prove that plaintiffs and defendants were *1000 guilty of fraud and collusion in issuing attachments against the -defendants. The plaintiffs purchased the property under seizure, and agreed to cultivate thejplantations and conduct the commercial business in their own names, at $75 per month each; when plaintiffs, from the profits of the business, realized the debt, they agreed to restore the property and business to defendants. The necessities of the creditor and debtor would naturally point to this arrangement.”
As is justly observed by the counsel of Yale & Bowling, the foregoing are merely the reasons that were assigned by the court for its judgment rejecting the demands as third opponents and for sustaining the plaintiff’s attachment. The title of the plaintiff, as purchaser of the defendants’ property pendente lite, was not at issue therein, though it was undoubtedly a factor in the conclusion reached by the court; and consequently, same was not directly passed upon, and the judgment thus rendered constitutes no bar to this action — notwithstanding it was this purchase and agency that constituted one of the • grounds of attack made upon these proceedings.
In so far as the case of the plaintiffs in injunction are concerned, it is just about as it is stated in'their petition, and as announced in the extract we have quoted from the 44th Annual — so far as the face of the papers is concerned. For0it appears that, upon application of some of the attaching creditors, the stock of goods in dispute, as well as other properties attached, was advertised and sold under an order of court pendente lite, to prevent a loss being sustained by deterioration and waste; and, at the sale thus made, plaintiffs in attachment become the adjudicatees; and the proceeds of sale were distributed ratably and according to the respective privileges of the attaching creditors. The purchasers being creditors for a large amount, and entertaining doubt of collecting their claim, employed their debtors, Bond & Williams, as their agents, as alleged in petition, and turned the stock of goods over to them, as stated in the opinion referred to — hoping that, by this arrangement, they might realize the full amount of their debt. Under this arrangement the defendants conducted the business without interruption or ’ change, until the date of Yale & Bowling’s seizure, and against which plaintiffs’ injunction is directed.
The proof furnished by plaintiffs in injunction is to the effect that, subsequent to the foregoing arrangement having been made, the mercantile establishment was constantly supplied from their house *1001 in the city of St. Louis; and that the stock of goods that were seized by Yale & Bowling consisted of the old stock that was adjudicated to them and such additions as had thus been made since the time of adjudication. These facis are attested by sundry invoices and bills of lading, and the testimony of the members of the plaintiffs’ corporation as well as that of the defendants’ firm, notwithstanding the defendant, Williams, stated that he considered that the goods belonged to the defendants, because the plaintiffs had charged the price to their account. But the statement of Williams is completely overborne by the testimony, oral as well as written, including rendered accounts, which are to the effect that the purchase price of the old stock, as well as the price of the new goods, was charged to the account of Bond & Williams, agents. Bond also gave it as his opinion that the goods belonged to the defendants because the profits of the business were applied to the credit of their indebtedness to Gilkeson-Sloss Commission Company. But he was frank enough to admit that, in his opinion, the ownership of the goods was a mooted question. Though it seems quite apparent that his opinion was a non-sequiter, as the fact of the profits of the mercantile enterprise being passed to the credit of defendants with Gilkeson-Sloss Commission Company in effect should clearly indicate that they were owners instead of the defendants. He also admits that, in 1892, Bond & Williams, as agents of Gilkeson-Sloss Commission Company, had possession of the storehouse and stock of goods at Bonita — the property in dispute; and were thus in possession at date of the seizure enjoined. That the stock of goods went in the name of Bond & Williams, agents, but that Bond & Williams got the benefit of the profits of the business. That both of the defendants, Bond and Williams, were paid salaries.
He further states that defendants did “ the mercantile and planting business in 1892, under the contract as agents for Gilkeson-Sloss Commission Company. That that business extended over in 1893— until the seizure in this case. Gilkeson-Sloss Commission Company furnished nearly all the goods, merchandise, etc., for the Bonita store in 1892, and up to the seizure in 1893.”
He gave it as his opinion that, upon a fair settlement between the defendants and Gilkeson-Sloss Commission Company in 1893 there would be a small balance due the latter. He states that third opponents advanced the defendants money with which to buy cotton, *1002 and that a disagreement arose between them in reference to the four $1000 drafts that figure in their account, but that, subsequently, credit was given them for $4000 to'cover this aggregate amount. He says that defendants’ object in conducting the mercantile business at Bonita, under the firm name of Bond & Williams, agents, was “to make money enough to pay up Gilkeson-Sloss Oommission Company, and save what they could after paying them up.”
Williams, as a witness, puts the case in this way, viz.:
“What property we would have was responsible for the losses of the firm, if there was any, and whatever profits there was in the business was to go to the homologation of what we owed Gilkeson-Sloss Oommission Company.”
Notwithstanding the foregoing statements of the two defendants, they also state — inferentially, at least — that this agency was a cloak to screen and protect them from other creditors, and that the four $1000 drafts were intended to swell the amount of their indebtedness,. apparently, so as to serve as an additional security for them. But these statements are completely overcome by other testimony, and by their own conflicting evidence.
The contention of counsel for the seizing creditors (brief, p. 8) is to the effect that Bond & Williams were the equitable owners of the goods, and that the third opponents held the legal title as a quasi pledge, or in other words that third opponents were to conduct the business through the agency of the defendants until the latter’s debts were paid and then transfer it to them.
Pursuing that theory, their argument is, that if, at any time, the defendants paid their indebtedness, they would, of right, be restored to the full ownership of the property, regardless of the will of their creditors, and inure to the benefit of all of their creditors generally. Hence they insist that, inasmuch as, under the code, the perfect ownership of a thing is vested in him who has immediate dominion of it, and not in him who has a mere beneficial right in it (R. O. O. 489 • and 490), Gilkeson-Sloss Oommission Company were never owners of the merchandise in dispute, because they only had a beneficial interest in it. But this argument fails, necessarily, because they were not merely conducting the business through defendants, as agents, but were the actual owners of the goods by means of the sheriff’s adjudication.
The code provides also that in case the thing sold remains in pos *1003 session of the seller because he has reserved to himself the usufruct,, or retains possession by a precarious title, there is reason to presume the sale is simulated, and, with respect to third persons, the parties must produce proof that they are acting in good faith and establish the reality of the sale. R. O. C. 2480.
But assuming that defendants are, in the sense of that article, holding possession by a precarious title and have the burden of proof put upon the third opponents to make out their good faith and show the reality of the sale, we are of opinion that, considering the proofs already adverted to, they have discharged that burden and shown their good faith, as well as the reality of the sale ab initio.
Assuming that the defendant’s possession was precarious, that fact would justify the direct seizure of the plaintiffs in execution and nothing more.
. But there are several transactions and circumstances that counsel for the seizing creditors cite and rely upon as completely offsetting the proofs of the reality of the transaction that are furnished by the plaintiffs in injunction.
Some of them are as follows, viz.:
First. That, notwithstanding the contract of mandate from third opponents to the defendants, whereby it is claimed that the relations of principal and agent were established, bears date February 4, 1892, yet their account with Bond & Williams, agents, was opened on January 6 previously, and upon which are entered as debits the following items, to-wit: (1) The draft given by Burwell to the sheriff for the stock of goods; (2) the amount of attorneys’ fees paid by them in their proceedings against Bond & Williams; (3) sundry drafts of Bond & Williams, given for rent, to various persons, and •for other purposes — thus evidencing the continuation of their old account against Bond & Williams individually.
As subsequently explained in the testimony of third opponents’' witnesses, these were possibly erroneous entries on the account; but, under the agreement of the parties, that when “from, the profits of the business (they) had realized their debt,” they were' “ to restore .the property and business to the defendants,” it was altogether right and proper for the plaintiffs to have kept an exact and faithful account of all their expenses and expenditures in order that they might know when “ from the profits of the business they *1004 had realized their debt,” and were under obligation to restore the property to the defendants.
Under their agreement it could not certainly be expected that third opponents should lose the money they had expended in the purchase of the property, the amount of the attorneys’ fees and costs they had expended in the litigation in which they acquired the property, and then surrender the property upon defendants making payment of their judgment debt alone. Surely not. On the con? trary, is it not reasonable that in making a composition with their judgment debtors, third opponents should have required, as a condition, the full and complete satisfaction of all dues and demands? We think so. It would have been a circumstance to which suspicion might have attached had such an arrangement been made and no provision incorporated therein looking to the reimbursement of ■such costs and expenses to Gilkeson-Sloss Commission Company.
Second. That in the course of the correspondence between the plaintiffs in injunction and the defendants, the former wrote a letter to the latter, in which the ownership of the merchandise in question was admitted to be in them. It is as follows, viz.:
“St. Louis, October 14, 1892.

“Messrs. Bond & Williams, Bonita, La.:

“Dear Sirs — Your letter 14th received, with B. L. 17 bales ■cotton; the cost of carrying, including loss in weight, this early in the season will soon amount to a sum in excess of any reasonable advances. As regards the cotton you have picked, it ought to be insured. You can’t afford to lose 250 to 275 bales cotton. Your merchandise, gin and store ought to be insured also. It costs something, but pays; in fact, you can’t afford to go without. The market continues to decline, although crop reports are favorable.
“ Yours very truly,
“ John M. Gilkeson, President.”
This isolated letter, that is much relied upon by the seizing creditors, is, to our thinking, explained by the statement of Gilkeson .and Burwell; and their testimony is supported, in the main, by the •other facts and circumstances of the case. The fact that, out of all :the letters, contracts, accounts and bills of lading, this is the only cono that can be found in which such an admission is made most <clea:ly indicates that it was altogether unintentional. This idea is *1005 strengthened when we take into consideration the strenuous effort-that is made by counsel of the seizing creditors to impair and destroy the effect of the testimony of these witnesses. On this-score their contention is, that they were guilty of perpetrating a fraud upon the District Court, and this court, on the trial of the case of Gilkeson-Sloss Commission Company vs. Bond & Williams, Yale & Bowling in liquidation, and A. Baldwin & Co. Limited, third opponents in this, to-wit: That, in that case, the plaintiff company were enabled to defeat the charges of fraud that were made therein by third opponents and intervenors, and obtain a. final judgment sustaining their attachment against the property of the defendants, and amongst other properties the stock of merchandise in dispute, and mainly upon the testimony of those two witnesses. That, in the recent suit of Mrs. John A. Williams vs. Gilkeson-gloss Commission Company — a case just decided by this court — the defendant company defended, on the ground that the draft in question for $5000 and more, which figures on their account against the defendants, had not been paid, or realized as claimed and averred on the-trial of that suit; and that, consequently, they did not owe the plaintiff as payee the amount thereof. That their contention to that effect was embodied in their answer in this last named suit, and constitutes a judicial confession of an unconscionable fraud that the said witnesses enabled the plaintiff company in the first named suit to-perpetrate upon a court of justice.
'Ihe statement relied upon is as follows, viz.:
“ That said draft was drawn with the agreement and understanding by and between your defendant’s agent, Burwell, and plaintiff and plaintiff’s husband, John A. Williams, of Bond & Williams, that the same was to be drawn and endorsed by plaintiff and forwarded to your defendants in St. Louis; that the same was to be charged in account versus Bond & Williams, and that no part of said draff was to be paid by your defendants until they were paid in full by Bond & Williams all indebtedness of Bond & Williams to your defendants, and then whatever amount they could realize out of claim or judgment against said Bond & Williams, that said draft was to enter into and make up, from the property of said Bond & Williams, was to be paid to plaintiff.” Record, p. 416.
The contention of counsel is, that this judicial confession is directly at variance with the testimony of the plaintiffs and that of their- *1006 agent, 'Burwell, in the former case, which was to the effect that their entire account against the defendants was just and due, and upon which testimony the court founded its judgment. And that, had the confession that was made in said answer been made known to the court in the former case, a judgment would have been rendered thereon dissolving the plaintiff’s attachment.
Counsel’s theory seems'to be that the attachment must necessarily have fallen, because such proof as that which is contained in said answer shows that defendant’s indebtedness was contingent and not absolute.
But without going into any refined discussion of this question, it seems quite sufficient to say that, conceding the prejudicial effect of the former testimony upon the credibility of Gilkeson and Bur-well, we are unable to perceive any reason why the same consequences should not attach to the credibility of Bond & Williams, who were evidently cognizant of it and consenting to it. For, if it impairs the credibility of the former, it certainly • does that of the latter; and disregarding the testimony of Gilkeson, Burwell, Bond and Williams would strip the case of the seizing creditors of any support.
Aside from their testimony there are sufficient facts and circumstances detailed in the record to sustain the adjudication and defeat the charge of simulation. And, without sanctioning the course pursued by Gilkeson and Burwell, we must say that, even if their testimony in the former case was disingenuous and untrue, yet, as it is supported by other indubitable proofs in this case, we can not pronounce same wholly unworthy of belief.
After a careful examination and study of this case in all of its bearings, our conclusion is that the charge of simulation is not made out, but that the adjudication of the stock of goods and merchandise to the plaintiffs in injunction was a real transaction, and that they are entitled to the affirmance of the judgment pronounced in their favor by the court a qua.
Judgment affirmed.